[L. A. No. 3137. Department Two.—July 26, 1913.]

# UNIVERSAL TALKING MACHINE MANUFACTURING COMPANY, Respondent, v. SOUTHERN CALIFORNIA MUSIC COMPANY (a Corporation), Appellant.

CONTRACT—SALE OF PHONOGRAPHIC RECORDS—LICENSE TO BUYER TO SELL ONLY AT MINIMUM PRICE—MANUFACTURER NOT BOUND TO MAINTAIN SELLING PRICE.—A manufacturer of phonographic records, in selling them to the trade, made the sale subject to the conditions contained in a notice printed on the back of each record, as follows: "This record, which is registered on our books is licensed for sale and use only when sold to the public at a price not less than 60 cents each. . . . No license is granted to use this record when sold at a less price.

"This record is licensed solely for the purpose of producing sound directly from the record, and for no other purpose; all other rights under the licensor's patents under which this record is made are expressly reserved in the licensor. Any attempt at copying or counterfeiting this record will be construed as a violation of these conditions. Any sale, or use of this record in violation of any of these conditions will be considered an infringement of the U. S. patents covering this record . . . , and all parties so selling, or using this record, or any copy thereof, contrary to the terms of the license, will be treated as infringers of the said patents, and each of them, and will render themselves liable to suit. This record is only licensed for sale and use only and so long as this label remains upon it; any erasures or removal of this label will be construed as a violation of this license. A purchase is an acceptance of these conditions. All rights revert to the licensor in the event of any violation." *Held*, that such notice did not impose, either directly or by implication, any obligation on the manufacturer to sell its records to the trade at any particular price, or to sell them to the trade at a price that would maintain the price stipulated in the notice.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Edw. F. Wehrle, and Anderson & Anderson, for Appellant.

Flint, Gray & Barker, for Respondent.

LORIGAN, J.—Plaintiff is a manufacturer of phonographic records in the state of New Jersey. Defendant is engaged in selling musical instruments, supplies, and phonographic records at wholesale and retail in the city of Los Angeles.

This action was brought by plaintiff to recover from defendant a balance due of $8,433.24 for phonographic records sold it during a course of years.

In its answer defendant admitted a balance due of $2,433.24 but defended against the further amount of six thousand dollars claimed due by plaintiff on the ground that it was damaged to that extent by a breach on the part of plaintiff of a contract between them respecting the sale and purchase of said records. As to such defense it was averred that the phonograph records purchased by it from plaintiff consisted of what are known as Zon-o-phone ten and twelve inch disc records manufactured by plaintiff; that it was agreed between the parties when defendant purchased them from the plaintiff that the price of said records to jobbers, dealers and at retail would be maintained by plaintiff at certain prices (specified in the answer), and that defendant would not sell in violation of the same; that under said agreement defendant purchased a large number of records from plaintiff of both such sizes and at such prices; that subsequently, in October, 1908, without the consent of defendant and while it had on hand thirty thousand of said single-disc records, plaintiff lowered the prices thereof (to certain figures set forth) and sold and permitted all its customers to sell said single-disc records at such reduced prices; that in 1909 while defendant had on hand twenty-eight thousand of such records plaintiff, without the consent of defendant, further lowered the prices of said records; that by the action of plaintiff in lowering the prices of said records and in selling and permitting them to be sold at such reduced prices the value of the records which defendant had on hand was lessened to the extent of six thousand dollars, and defendant thereby damaged in that amount.

The court found that no agreement whatever was made between plaintiff and defendant that the plaintiff would maintain any price for said records as asserted by defendant and gave judgment to plaintiff for the full amount sued for.

Defendant appeals from the judgment and an order denying its motion for a new trial.

The principal claim made by appellant is that the findings of the court, in various forms, negativing the existence of an agreement to maintain prices are not only not sustained by the evidence but are contrary thereto. In addition it is claimed that the court erred in rulings on the admission of testimony.

It is conceded by the appellant that except for certain printed matter on the back of each record sold by plaintiff to defendant there is such a conflict in the evidence as to the making of the agreement asserted by defendant that the findings of the court against it could not be disturbed. The printed matter referred to is as follows:

"Notice—Zon-o-phone—10 inch record.

"This record, which is registered on our books . . . , is licensed for sale and use only when sold to the public at a price not less than 60 cents each. . . . No license is granted to use this record when sold at a less price.

"This record is licensed solely for the purpose of producing sound directly from the record, and for no other purpose; all other rights under the licensor's patents under which this record is made are expressly reserved in the licensor. Any attempt at copying, or counterfeiting, this record will be construed as a violation of these conditions. Any sale, or use of this record in violation of any of these conditions will be considered an infringement of the U. S. patents covering this record, among others (giving date, number and name in patents), and all other U. S. patents under which these records are made by the owners of the patents; and all parties so selling, or using this record, or any copy thereof, contrary to the terms of the license, will be treated as infringers of the said patents, and each of them, and will render themselves liable to suit. This record is only licensed for sale and use only and so long as this label remains upon it; any erasures or removal of this label will be construed as a violation of this license. A purchase is an acceptance of these conditions. All rights revert to the licensor in the event of any violation.

"March 1, 1907.

"Universal Talking Machine Mfg. Co."

This printed matter was on the back of all the records sold to the defendant. In fact, it appears that it was printed upon the back of all the records manufactured and sold by plaintiff to the trade.

The position of appellant is that if the sale by plaintiff to it of these records with this printed matter contained thereon did not constitute an express agreement by plaintiff with defendant to maintain prices, it at least constituted an implied contract to do so; that the obvious injustice of any other construction would compel this one.

But it is quite evident that this printed notice in no particular constituted any written agreement on the part of plaintiff to do anything. It was simply an obligation cast by the plaintiff, as manufacturer, upon dealers or jobbers in making sales of the records that they purchased from the plaintiff as manufacturer thereof. It simply imposes terms and conditions under which the dealer may dispose of the records to the public. It has nothing to do with prices between the manufacturer and the dealer. There is not a word of restriction imposed upon the manufacturer. It is simply a trade license or condition imposed upon the dealer and upon him alone. It leaves the manufacturer free to do as it pleases concerning these records; to insist upon or waive the condition it imposes as it sees fit. There is not a word in it that binds the manufacturer in any way or that gives any right or imposes any obligation against it in favor of the dealer. It is not claimed that the printed matter is not complete in itself; that there is any other agreement than that which is disclosed on its face. It is not pointed out by counsel for appellant wherein there is anything which amounts to an agreement with defendant, nor can we see how it could possibly be so construed. In view of its terms it amounts to nothing more than an obligation or condition assumed by and binding on the dealer in the records alone in favor of the plaintiff. The only claim of the defendant is that if the dealer is to be held to the given prices thereunder fixed, a reciprocal duty by implication at least rested upon plaintiff not to reduce prices. How this implication can be worked out; that is, that the manufacturer impliedly agreed thereby that for all time it would not lower the price of the records or permit any dealer to sell at any other price than prevailed

when defendant purchased its records; appellant does not point out, and we do not perceive how it can be done.

The fact is, as the record in this case discloses, that appellant is now endeavoring on account of an unfortunate situation which affected both the plaintiff and itself to work out an agreement solely from the printed license and restriction in the use of records which in terms alone bound it or any other dealer who purchased them as to the price for which they should be sold. While originally furnishing these single-disc records to the trade with these restrictions upon them, plaintiff was later compelled on account of the invention of the double-disc records and their introduction into the market to meet the competition thereby created. It commenced the manufacture and supply of double-disc Zon-o-phone records. Naturally the effect of placing on the market these double-disc records by plaintiff and the other manufacturers at but a little in advance of the prices that dealers and jobbers had agreed to sell the single-disc records manufactured by plaintiff made the sale of the latter difficult. While the plaintiff might have left the trade to look out for itself under these changed conditions, as far as any legal obligation on its part under the trade license relied on by defendant is concerned, and to suffer the loss consequent thereto if the trade could not sell the records it had purchased of plaintiff at the prices it had agreed to sell them at, the plaintiff as a matter of business interest and with a view of relieving the situation as to dealers handling its single-disc records sent circular letters to its patrons, including defendant. These explained the changed situation arising from the introduction of the double-disc records and expressed the willingness of plaintiff to relieve them from the terms of the obligation imposed upon them by the printed agreement on the records as far as its business interests would permit and to reduce the prices mentioned therein so that the dealers might be able to dispose of the stock on hand at prices they might be able to obtain in the market. The plaintiff as manufacturer suggested that a reduction to forty cents per record should relieve the situation and offered to allow the dealer and jobber to sell at that price in order to get rid of these records without much profit but at no loss. Defendant was naturally agreeable to accepting any offer which might enable it to dispose of its stock of these

records and hence to this offer of plaintiff to allow dealers to sell at forty cents per record answered that it was agreeable to it that this course be adopted.

This did not seem to relieve the situation of defendant, not because in the ordinary course of business sales could not be made at these reduced figures, but because, as appears from one of the letters written to plaintiff, it through its own fault had already overstocked itself with single-disc records when the double-disc records appeared on the market. We simply mention these facts, not as bearing on the construction of the printed agreement which we have said was solely a restriction imposed by the plaintiff as manufacturer upon the defendant as dealer, and did not bind plaintiff to do anything, but to fairly show the circumstances surrounding the reduction of prices as the record discloses it.

Some twenty assignments of error in the admission of evidence offered by the plaintiff are made. Most of these are directed to the introduction of correspondence between the parties as to the account of the defendant with plaintiff; also respecting the reduction of the prices of the records and on the issue as to an agreement to maintain prices. We have examined all these assignments and find that no error was committed by the court in its rulings.

The judgment and order appealed from are affirmed.

Henshaw, J., and Melvin, J., concurred.